POOLE, Circuit Judge:
 

 This appeal presents the issue whether under § 330 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 330 (hereafter § 330), a fee award based on an attorney’s standard hourly billing rate and the actual number of hours worked may be enhanced on the basis of the factors set forth in
 
 Kerr v. Screen Extras Guild,
 
 526 F.2d 67 (9th Cir.1975),
 
 cert. denied,
 
 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). In keeping with the general standards applicable to federal fee-shifting statutes, we hold that compensation awards under § 330 may be enhanced only in exceptional circumstances where the applicant produces specific evidence that an award based on his standard hourly rate and actual hours worked does not fairly compensate for the work done, as is the purpose of the
 
 Kerr
 
 factors.
 

 BACKGROUND
 

 Appellant represented the Creditors’ Committee in Manoa Finance Company’s reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1101
 
 et seq.
 
 He eventually filed an application for final compensation under 11 U.S. C. § 330 based on his standard billing rate for actual hours spent performing necessary legal services, plus general excise taxes and reimbursement of costs, for a total of $140,908.65. The bankruptcy court approved this request, with one exception not pertinent here. Appellant additionally requested “such amount of bonus compensation as the Court deems reasonable for exceptional results achieved,” suggesting that $100,000 would be appropriate. The bankruptcy court disallowed the bonus, holding that “no award of a bonus will be made to any professional person employed in the case and that the fees of attorneys will be allowed only on the basis of their regular, usual and customary hourly rates for the time invested.” The bankruptcy court believed that the principles set forth in
 
 In re THC Financial Corp.,
 
 659 F.2d 951 (9th Cir.1981),
 
 cert. denied,
 
 456 U.S. 977, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982), continued to apply under the Bankruptcy Reform Act of 1978 and precluded the award of bonuses. Appellant appeals denial of the requested bonus, arguing that
 
 THC Financial
 
 is inapplicable to compensation granted under § 330. He maintains that in determining whether to award the requested bonus the bankruptcy court should have considered and applied the
 
 *689
 
 factors set forth in
 
 Kerr.
 

 [1]
 

 DISCUSSION
 

 Evolution of Compensation in Bankruptcy Cases
 

 Under the Bankruptcy Act of 1898 compensation awards were authorized by § 241 (formerly codified at 11 U.S.C. § 641) which provided in relevant part:
 

 The judge may allow ... reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in a proceeding under this chapter—
 

 (5) by the attorney for the petitioning creditors.
 

 Compensation awards under § 241 were governed by policies of economy of administration and conservation of estate.
 
 In re Beverly Crest Convalescent Hosp., Inc.,
 
 548 F.2d 817, 820-21 (9th Cir.1976, as amended 1977);
 
 In re York Int’l Bldg., Inc.,
 
 527 F.2d 1061, 1072 (9th Cir.1975);
 
 Jacobowitz v. Double Seven Corp.,
 
 378 F.2d 405, 408 (9th Cir.1967). Trustees and attorneys were considered public officers and as such were not entitled to the same compensation for their services as they might have received in private employment.
 
 York,
 
 527 F.2d at 1069. Bonuses, in the nature of a reward for good services, were not allowed. Rather, excellent work was viewed as a predicate for an award close to private rates.
 
 THC Financial,
 
 659 F.2d at 954.
 

 The corresponding compensation provision in the Bankruptcy Reform Act of 1978 is § 330, which similarly authorizes reasonable compensation for certain services and costs. 11 U.S.C. § 330. Section 330 provides:
 

 (a) After notice to any parties in interest and to the United States trustee and a hearing ... the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor’s attorney—
 

 (1) reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of compárable services other than in a case under this title; and
 

 (2) reimbursement for actual, necessary expenses.
 

 11 U.S.C. § 330.
 

 The legislative history provides considerable insight into Congress’s intent in adopting § 330:
 

 The compensation is to be reasonable, for actual necessary services rendered, based on the time, the nature, the extent, and the value of the services rendered, and on the cost of comparable services other than in a case under the bankruptcy code. The effect of the last provision is to overrule
 
 In re Beverly Crest Convalescent Hospital, Inc.,
 
 which set an arbitrary limit on fees payable, based on the amount of a district judge’s salary, and other, similar cases that require fees to be determined based on notions of conservation of the estate and economy of administration. If that case were allowed to stand, attorneys that could earn much higher incomes in other fields would leave the bankruptcy arena. Bankruptcy specialists, who enable the system to operate smoothly, efficiently, and expeditiously, would be driven elsewhere, and the bankruptcy field would be occupied by those who could not find other work and those who practice bankruptcy law only occasionally almost as a public service. Bankruptcy fees that are lower than fees in other areas of the
 
 *690
 
 legal profession may operate properly when the attorneys appearing in bankruptcy cases do so intermittently, because a low fee in a small segment of a practice can be absorbed by other work. Bankruptcy specialists, however, if required to accept fees in all of their cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field.
 

 H.R.Rep. No. 595, 95th Cong., 2d Sess. 329-30,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5963, 6286.
 

 Upon introducing an amendment to the bill containing the version of § 330 which was adopted, Senator DeConcini commented:
 

 Attorneys’ fees in bankruptcy cases can be quite large and should be closely examined by the court. However bankruptcy legal services are entitled to command the same competency of counsel as other cases. In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11.... Notions of economy of the estate in fixing fees are outdated and have no place in a bankruptcy code.
 

 124 Cong.Rec. 33,994 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 6505, 6511.
 

 The above comments are neither exhaustive nor dispositive, but it is clear that in adopting § 330 Congress intended a retreat from doctrines which strictly limited fee awards under § 241 to less than attorneys might have received for services of the same professional quality in non-bankruptcy cases.
 
 See In re Nucorp Energy, Inc.,
 
 764 F.2d 655, 659 (9th Cir.1985). Hence, to the extent that
 
 THC Financial
 
 prohibited bonuses necessary to make compensation awards competitive with fees for comparable non-bankruptcy services, it does not apply to awards made under § 330. However, we think that in enacting that section Congress did not intend to authorize higher compensation than attorneys would receive for comparable non-bankruptcy services.
 

 The bankruptcy court erred in concluding that compensation awards under § 330 can never include an element denominated a “bonus.” The remaining question is what circumstances justify a bonus when the baseline compensation is calculated by multiplying the attorney’s standard billing rate by the actual number of hours reasonably expended on the matter. For guidance we look to the attorney’s fees awarded under the federal fee-shifting statutes.
 

 Federal Fee-Shifting Statutes
 

 In determining a reasonable attorney’s fee under § 330, many courts have adopted the formulae used to calculate fees under various federal fee-shifting statutes.
 
 E.g., In re Consolidated Bancshares, Inc.,
 
 785 F.2d 1249, 1257 (5th Cir.1986) (12-factor analysis);
 
 Harman v. Levin (In re Robertson),
 
 772 F.2d 1150, 1151-53 (4th Cir.1985) (12-factor analysis);
 
 In re Powerine Oil Co.,
 
 71 B.R. 767, 771 n. 3 (9th Cir. BAP 1986) (limitations on availability of adjustments to the lodestar);
 
 In re Schaeffer,
 
 71 B.R. 559, 562-63 (Bankr.S.D.Ohio 1987) (principles established in Supreme Court decisions construing fee-shifting statutes);
 
 In re Sly,
 
 77 B.R. 115, 117-18 (Bankr.N.D. Ohio 1986) (calculation begins with lodestar then proceeds to 12-factor analysis);
 
 In re Elmendorf Bd. Corp.,
 
 57 B.R. 580, 584-87 (Bankr.D.N.H.1986) (limitations on availability of adjustments to the lodestar);
 
 In re Pacific Express, Inc.,
 
 56 B.R. 859, 862 (Bankr.E.D.Cal.1985) (12-factor analysis). Our circuit has suggested, without elaboration, that the factors applied in feeshifting cases are relevant in determining a reasonable fee under § 330.
 
 In re Yermakov,
 
 718 F.2d 1465, 1471 (9th Cir.1983) (citing
 
 Johnson v. Georgia Highway Express, Inc.,
 
 488 F.2d 714, 717-19 (5th Cir.1974), and the 12-factor analysis first developed therein.)
 

 Some courts have assumed without discussion that the principles governing awards under the fee-shifting statutes are applicable; others have stated their reasons, including the substantial similarity of purpose between § 330 and the typical fee-
 
 *691
 
 shifting statute, the fact that several elements of the judicially developed 12-factor analysis used in statutory fee-shifting cases were included in § 330 itself, and the general applicability of the Supreme Court’s pronouncements in the area of statutory fee authorizations.
 
 Schaeffer,
 
 71 B.R. at 563;
 
 In re Kero-Sun, Inc.,
 
 59 B.R. 630, 633-34 (Bankr.D.Conn.1986). In a somewhat different context we, too, have noted that § 330 is similar to fee-shifting statutes in the important respect that it is intended to attract competent counsel by awarding reasonable compensation for services rendered.
 
 Nucorp,
 
 764 F.2d at 662.
 

 There are, however, also some notable differences between § 330 and the typical fee-shifting statute. Congress has expressed its intent that bankruptcy compensation be commensurate with that earned in comparable nonbankruptcy cases, while the usual fee-shifting statute is not “intended to replicate exactly the fee an attorney would earn through a private fee arrangement with his client.”
 
 Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air,
 
 478 U.S. 546, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986)
 
 (“Delaware I").
 
 In addition, the source of fees in bankruptcy cases is unique, and § 330 has no parallel to the condition that fees will be awarded only to a prevailing party.
 
 In re Baldwin-United Corp.,
 
 79 B.R. 321, 346 (Bankr.S.D.Ohio 1987). Hence, while awards under fee-shifting statutes are by their nature contingent, the risk of nonpayment in bankruptcy cases generally arises only in the event of insufficient funds in the estate to pay for the services rendered.
 
 See Kero-Sun,
 
 59 B.R. at 634 n. 2;
 
 Elmendorf, 57
 
 B.R. at 587. Despite these differences, we conclude that § 330 and fee-shifting statutes are sufficiently similar to justify applying the same general principles for fee enhancements.
 
 Accord Schaeffer,
 
 71 B.R. at 563;
 
 In re Seneca Oil Co.,
 
 65 B.R. 902, 912 (Bankr.W.D.Okla.1986);
 
 KeroSun,
 
 59 B.R. at 633-34;
 
 Elmendorf, 57
 
 B.R. at 584-87. At the same time, we caution that the general principles may require some accommodation to the peculiarities of bankruptcy matters, particularly where enhancements relate to the risk of nonpayment. We also emphasize that under these general principles, enhancements based on results achieved, which is what appellant requested, will rarely be available. A compensation award based on a reasonable hourly rate multiplied by the number of hours actually and reasonably expended is presumptively a reasonable fee.
 
 See Clark v. Los Angeles,
 
 803 F.2d 987, 990 (9th Cir.1986). In addition, the following four
 
 Kerr
 
 factors are now considered subsumed within the lodestar and cannot serve as independent bases for an upward adjustment: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained.
 
 Delaware I,
 
 478 U.S. at 565, 106 S.Ct. at 3098;
 
 Miller v. Los Angeles County Bd. of Educ.,
 
 827 F.2d 617, 620-21 n. 4 (9th Cir.1987). Because these factors ordinarily are accounted for in either the hourly rate or the number of hours expended, they can support an upward adjustment only when it is shown by specific evidence that they are not fully reflected in the lodestar.
 
 See Delaware I,
 
 478 U.S. at 564-69, 106 S.Ct. at 3098-3100;
 
 Blum v. Stetson,
 
 465 U.S. 886, 898-900, 104 S.Ct. 1541, 1548-49, 79 L.Ed.2d 891.
 

 Application of the Standards in Bankruptcy Cases
 

 Despite the limitations which have been placed on upward adjustments to the lodestar, there remains a possibility that an enhancement will be necessary to make the amount of compensation reasonable and commensurate with the rate for comparable non-bankruptcy services.
 
 See e.g. Baldwin-United,
 
 79 B.R. at 347-51 (awarding enhancements for the risk of nonpayment, for results which were outstanding by any standard, and because the hourly rate used to calculate the baseline award was not comparable to the firm’s rate in non-bankruptcy matters);
 
 Powerine,
 
 71 B.R. at 773-74 (finding the factor of “results obtained” insufficient to justify an upward adjustment, but affirming based on the high risk that fees would not be paid);
 
 Elmendorf, 57
 
 B.R. at 586-88 (granting an enhancement to the lodestar based on truly exceptional results and the
 
 *692
 
 risk of nonpayment).
 
 But see In re Terex Corp.,
 
 70 B.R. 996, 1003 (Bankr.N.D.Ohio 1987), (denying a bonus and noting that attorneys in private practice do not bill their clients for a lump sum bonus based upon good results achieved);
 
 Schaeffer,
 
 71 B.R. at 563 (while the results of litigation were both commendable and hard-won, there was no evidence to justify a premium under the
 
 Blum/Pennsylvania
 
 standard);
 
 Kero-Sun,
 
 59 B.R. at 634 (denying an upward adjustment which was requested on the basis of several factors, including results achieved, because all were included in the lodestar).
 

 In this case the bankruptcy court declined to consider the bonus requested by appellant, believing such bonuses flatly prohibited by our holding in
 
 THC Financial.
 
 We remand for consideration of appellant’s request. In doing so we note that appellant was awarded his standard billing rate for all time spent performing necessary legal services, plus costs. There is a strong presumption that this award was “reasonable compensation.” In order to justify a bonus, appellant must come forward with specific evidence showing why the results obtained were not reflected in either his standard hourly rate or the number of hours allowed. He must also show that the bonus is necessary to make the award commensurate with compensation for comparable nonbankruptcy services. If the bankruptcy court determines that a bonus is justified, it must make detailed findings in support of that determination.
 
 Delaware I,
 
 106 S.Ct. at 3098.
 

 In reaching a decision, the court should evaluate the evidence in light of the Supreme Court’s admonition that:
 

 [Wjhen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client’s interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance.
 

 Id.
 

 Attorney’s Fees and Costs on Appeal
 

 Appellant has stated his intention to seek reimbursement under § 330 for attorney’s fees and costs on appeal as “actual, necessary services rendered.” In
 
 Nucorp
 
 we discussed the consistency with which statutory fee award provisions have been read as authorizing compensation for time spent successfully litigating fee awards, and we equated § 330 to these provisions. 764 F.2d at 659-63. Based on this reasoning appellant would be entitled to reimbursement for the reasonable cost of bringing this appeal only if he ultimately prevails in securing the requested bonus.
 

 CONCLUSION
 

 That portion of the bankruptcy court’s order denying all enhancement is VACATED and the case is REMANDED for reconsideration of appellant’s request in light of the standards set forth in this opinion.
 

 [1]
 

 . The factors listed in
 
 Kerr
 
 as relevant to the determination of a reasonable fee are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability” of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. 526 F.2d at 70.