**APEX OIL COMPANY,
et al., Appellants,**

v.

**Lloyd A. PALANS, Appellee.**

Nos. 91–0012C(3), 91–192C(3).

United States District Court,
E.D. Missouri, E.D.

May 13, 1991.

---

**614**

Robert Jay Moore, Deborah Weedman, Howard J. Weg, Gendel Raskoff Shapiro & Quittner, St. Louis, Mo. and Los Angeles, Cal., and Dennis A. Ferrazzano, Barack Ferrazzano Kirschbaum & Perlman, Chicago, Ill., for debtors.

James S. Cole, Office of the U.S. Trustee, St. Louis, Mo.

Lloyd A. Palans, Gallop Johnson & Neuman, examiner, St. Louis, Mo.

Steven Cousins, Armstrong Teasdale Schlafly Davis & Dicus, St. Louis, Mo., for unsecured creditors committee.

Allen S. Boston, James V. O'Brien, and James L. Matchefts, Lewis Rice & Fingersh St. Louis, Mo., for Mr. Novelly.

Audrey G. Fleissig and John D. Evans, Peper Martin Jensen Maichel & Hetlage, St. Louis, Mo., for SCR Inv. and Samuel R. Goldstein.

## ORDER

HUNGATE, District Judge.

This matter is before the Court on appeal from a final order of the Honorable Barry S. Schermer, United States Bankruptcy Judge for the United States District Court for the Eastern District of Missouri. *In re Apex Oil Co.*, 111 B.R. 235 (E.D.Mo.1990). Pursuant to Rule 8001 of the Bankruptcy Rules and the provisions of 28 U.S.C. § 158(b)(1), the debtors-appellants and appellant P.A. Novelly appeal that portion of Judge Schermer's order that awarded a fifteen percent fee enhancement to the appellee-examiner, Lloyd A. Palans, in the Apex Oil Company bankruptcy proceedings. The Court heard oral argument on this matter on April 18, 1991.

On January 25, 1990, the bankruptcy court conducted an evidentiary hearing on the Application of Examiner Lloyd A. Palans for Final Compensation. In his Application, the Examiner sought actual fees incurred by his law firm in the amount of $1,272,137.52 and a fee enhancement or bonus in the amount of $170,106.30, representing fifteen percent of the total fees claimed by the Examiner. Appellants objected to the Examiner's request for a bonus.

At the hearing below, the Examiner offered into evidence, without objection, various exhibits, sworn statements and other materials in support of his request for a bonus. Appellants did not present any evidence at the hearing. At the conclusion of the hearing, the bankruptcy court granted appellee's request for 100% payment of all the Examiner's fees and expenses and the request for a $170,106.30 bonus.

On February 5, 1990, the bankruptcy court issued its Memorandum Opinion. The bankruptcy court found that the Examiner's performance and the results obtained were "rare and exceptional," thereby justifying the bonus award. The bankruptcy court made specific factual findings regarding the quality of the Examiner's service, the results achieved, and the value the Examiner's efforts conferred upon the debtors and creditors.

■ All parties agree on the appropriate standard of review this Court must employ in reviewing the bankruptcy court's order. The bankruptcy court's decision awarding a bonus to an examiner out of the debtor's estate can be reversed on appeal only if the bankruptcy judge abused his discretion in granting the award. *In re McCombs*, 751 F.2d 286, 287 (8th Cir.1984). Such an abuse of discretion can occur only "when the bankruptcy judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Beverly Mfg. Corp.*, 841 F.2d 365, 369 (11th Cir. 1988). *Accord In re McCombs*, 751 F.2d at 287. A finding is "clearly erroneous" if the reviewing court, upon review of the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." *In re Apex Oil Co.*, 884 F.2d

343, 348 (8th Cir.1989), *quoting United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

All parties agreeing on the standard of review to be applied, the only issue left before this Court is whether the bankruptcy court failed to apply the proper legal standard in awarding a bonus to the Examiner based on the quality of the Examiner's services and the results obtained.[1]

The compensation provision in the Bankruptcy Reform Act of 1978 provides that the court may award an examiner "reasonable compensation ... based on the nature, the extent and the value of such services, the time spent on such services, and the cost of comparable services [in non-bankruptcy cases]." 11 U.S.C. § 330. The legislative history of § 330 indicates Congress's intent, in adopting this provision, to ensure that competent attorneys remain in the bankruptcy field by not requiring the bankruptcy specialists to accept fees that are consistently lower than fees they could receive performing other comparable services in non-bankruptcy cases. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 329–330, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6286. Section 330 was not enacted, however, to provide higher compensation than counsel would receive for comparable non-bankruptcy services. *In re Manoa Finance Co.,* 853 F.2d 687, 690 (9th Cir.1988).

In determining "reasonable compensation" under 11 U.S.C. § 330, courts have applied certain principles used to calculate fees under federal fee-shifting statutes. *See id.* at 690–91; *In the Matter of Cena's Fine Furniture, Inc.,* 109 B.R. 575, 581 (E.D.N.Y.1990). Nonetheless, these general principles may require modification given the peculiarities of bankruptcy matters, "particularly where enhancements relate to the risk of nonpayment." *In re Manoa,* 853 F.2d at 691.

In determining attorney's fees awards, most cases involving fee-shifting provisions start with determining the number of hours reasonably expended multiplied by a reasonable hourly rate. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986) (hereinafter *Delaware I*). This amount is known as the lodestar amount and is strongly presumed to represent the reasonable fee to which an applicant is entitled. *Id.* at 565, 106 S.Ct. at 3098. This presumption may be overcome, and the basic fee adjusted upward, only if certain "rare and exceptional" circumstances justify such an adjustment. *Blum v. Stenson,* 465 U.S. 886, 898–99, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 (1984). The crux of the issue before the Court is whether quality of representation and results obtained can constitute "rare and exceptional" circumstances, thus supporting an upward adjustment, or whether these factors are necessarily subsumed in the lodestar calculation and compensated for in the basic fee award.

■ The parties cite numerous cases to the Court indicating that those cases stand for either (1) the proposition that a bonus may be awarded based solely on results obtained or quality of representation; or (2) the proposition that a bonus may never be awarded based on these factors. After a review of the relevant case law in both bankruptcy and non-bankruptcy cases, the Court concludes that the correct legal standard to be applied is that quality of representation or results obtained by the examiner may justify an enhancement only in the rare case where specific evidence is offered to show that the lodestar amount failed to adequately compensate the examiner for the services provided, *see Blum,* 465 U.S. at 899–900, 104 S.Ct. at 1549–1550, *and* the enhancement is necessary to make the award commensurate with compensation for comparable non-bankruptcy services. *In re Manoa,* 853 F.2d at 692. The Court finds that this standard is consistent

---

1. Appellee contends tha even if this Court determines that a bonus cannot be based on quality of representation or results obtained, the Court should still affirm the award based on the risk of non-payment faced by the Examiner. *See*

*Matter of Baldwin–United Corp.* 79 B.R. 321, 348 (S.D.Ohio 1987). However, Judge Schermer did not mention risk of non-payment in his opinion; thus this factor, if present, cannot support Judge Schermer's award.

with the policy behind § 330, as stated in the legislative history and the Supreme Court's admonition in *Delaware I* that:

> [W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance.

478 U.S. at 565–66, 106 S.Ct. at 3098.

The Bankruptcy Court relied on two bankruptcy court opinions to support the enhancement award. Judge Schermer cited the first one, *In re Morris Plan Co. of Iowa*, 100 B.R. 451 (Bankr.N.D.Iowa 1989), for the proposition that a fee enhancement may be awarded based upon outstanding work, and the second one, *Matter of Baldwin–United Corp.*, 79 B.R. 321 (Bankr. S.D.Ohio 1987), for the proposition that an enhancement based on outstanding work and results obtained is justified. The Court interprets these cases somewhat differently than Judge Schermer.

In *In re Morris Plan*, the Court concluded that "the skill and expertise shown by [the attorneys] ... is not adequately reflected in the lodestar rate." 100 B.R. at 457. While the bankruptcy court did not indicate specifically why the lodestar amount did not adequately compensate the attorneys, the court did recognize the need to make this showing. In *Baldwin–United*, the Court specifically rejected the applicability of some of the general principles of fee-shifting cases to bankruptcy cases. 79 B.R. at 346. However, *Baldwin–United* was decided prior to *In re Manoa*, a Ninth Circuit case which accepted the applicability of fee-shifting cases to bankruptcy cases. 853 F.2d at 691. Moreover, the *Baldwin–United* court based its enhancement in part on the great risk of non-payment. In contrast, Judge Schermer did not address the issue of non-payment in his opinion; thus his award cannot be supported by this factor.

While appellee identifies other bankruptcy court decisions that may support the proposition that an enhancement may be based solely on results obtained or the quality of representation, the Court chooses to follow the Ninth Circuit precedent, *In re Minoa*, 853 F.2d 687, as the Court finds that this decision is supported by the legislative history of § 330 and the development of the case law concerning fee awards in non-bankruptcy cases.

■ Judge Schermer failed to address why the results obtained or quality of the representation were not reflected in the lodestar amount. Moreover, Judge Schermer failed to state why a $170,106.30 bonus was necessary to make the Examiner's award commensurate with compensation for comparable non-bankruptcy services. Thus, the Court finds the bankruptcy court abused its discretion in awarding a fee enhancement of $170,106.30 because Judge Schermer applied an improper legal standard in making this award.

■ Interestingly, the evidence presented by the Examiner indicated that Mr. Palans billed his time at $20 less per hour than his standard hourly rate in non-bankruptcy matters, resulting in an underpayment of $45,288.00. The Court finds that a bonus in this amount is warranted to make the Examiner's fee award commensurate with compensation he could have received for comparable services in non-bankruptcy cases.

Accordingly,

IT IS HEREBY ORDERED that the Order of the United States Bankruptcy Court for the Eastern District of Missouri awarding appellee a $170,106.30 bonus or fee enhancement is reversed.

IT IS HEREBY FURTHER ORDERED that appellee is awarded a fee enhancement of $45,288.00.

Each party shall bear its own costs.