In re Stuart J. ATLAS and Vicki
K. Atlas, Debtors.

Bankruptcy No. 94–10805–BKC–RAM.

United States Bankruptcy Court,
S.D. Florida.

Dec. 4, 1996.

Lynn Maynard Gollin, Tew & Beasley, Miami, FL, for Trustee.

John Tanselle, Krieg, DeVault, Alexander & Capehart, Indianapolis, IN.

Richard Siegmeister, Coconut Grove, FL, for Debtor.

Amber Donner, Steven Turner, Assistant U.S. Trustee, Office of U.S. Trustee, Miami, FL, for U.S.

Patricia Dzikowski, Lauderhill, FL, as Trustee.

## MEMORANDUM OPINION AND ORDER DENYING UNITED STATES TRUSTEE'S MOTION FOR RECONSIDERATION AND DIRECTING PAYMENT OF FEE ENHANCEMENT AWARDED TO SPECIAL COUNSEL FOR TRUSTEE

ROBERT A. MARK, Bankruptcy Judge.

The United States Trustee ("UST") seeks reconsideration of an attorney's fee award

which included a $4,541.50 fee enhancement. The matter is before the Court on the UST's motion entitled Motion for Rehearing or Reconsideration of Award of Fee Enhancement to the Law Firm of Krieg DeVault Alexander & Capehart as Awarded in "Order Authorizing and Awarding Compensation and Reimbursement of Expenses to Professionals and to the Chapter 7 Trustee," Dated October 27, 1995 (CP 312), or in the Alternative, Request for Specific Findings and a Statement of the Facts and Considerations Supporting the Award of Such Fee Enhancement ("Motion for Reconsideration"). To the extent that the Motion for Reconsideration alternatively requests additional findings in support of the fee enhancement, that request is granted and those additional findings are contained in this opinion. For the reasons that follow, in all other respects, the U.S. Trustee's Motion for Reconsideration is denied.

### PROCEDURAL BACKGROUND

On October 26, 1995, the Court conducted a hearing on the Final Application for Compensation By Special Counsel for Trustee ("Application") filed by the law firm of Krieg DeVault Alexander & Capehart ("Applicant"). Applicant served as special counsel for the Trustee in connection with the sale of stock owned by the estate in Gateway Bank, a bank located in Indiana. Applicant sought fees in the amount of $30,458.50, including a fee enhancement of $10,000, and costs in the amount of $2,313. Although the Application clearly and explicitly requested a fee enhancement, the UST did not file a written objection to the Application.

The Court heard testimony[1] at the hearing in support of the Application from the Trustee, Patricia Dzikowski (the "Trustee"), Lynn Gollin, Esq., general counsel for the Trustee ("Trustee's Counsel") and John Tanselle, Esq., the lawyer from Applicant's firm who performed the bulk of the legal work. The UST had an opportunity to question these witnesses, but chose not to do so. In-

stead, the UST (and counsel for the Debtor) simply voiced their objection to the fee enhancement on their unsubstantiated conclusion that "Mr. Tanselle did exactly what he was hired to do." Transcript of October 26, 1995 hearing, p. 8:3–4 ("TR ___").

At the conclusion of the hearing, the Court announced its ruling awarding Applicant $25,000 in fees, which included a fee enhancement of approximately $4,500, less than half of the requested $10,000 enhancement. The findings and conclusions stated on the record included a specific finding that the results obtained by Applicant were exceptional, and justified a fee enhancement under the standards set forth by the Eleventh Circuit in *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir.1990). On October 27, 1995, the Court entered its Order Authorizing and Awarding Compensation and Reimbursement of Expenses to Professionals and to the Chapter 7 Trustee (the "Fee Award"), which awarded Applicant $25,000 in fees as announced at the hearing. The UST timely filed his Motion for Reconsideration, objecting only to the fee enhancement.

On November 30, 1995, the Court entered its Interim Order Directing Payment of Undisputed Fee Award to Special Counsel to Trustee and Reserving Ruling on Motion for Reconsideration ("Interim Order"). The Interim Order advised the parties that the Court would address the UST's objection to the fee enhancement without needing responsive pleadings from the Trustee or Applicant and without the need for oral argument. As simply stated in the Interim Order, preparing a response and appearing for further hearing would require Trustee's counsel or Applicant to either work for free or require the estate to incur additional legal expenses approaching or exceeding the modest amount of the fee enhancement at issue.

### DISCUSSION

**A. The Scope of the Evidentiary Hearing**

█ The crux of the UST's argument is that the Applicant failed to present "detailed

---

**1.** The U.S. Trustee's statement that there was no testimony "under oath" is correct, but it is generally not the policy of this Court to require attorneys to be sworn in before providing testimonial evidence at a hearing.

and specific evidence" to support its request for a fee enhancement. The UST characterized the hearing on the Application as devoid of evidence or sworn testimony and supported only by generalized statements.

There are two flaws in the UST's argument. First, the Court did take evidence in support of the Application. As described earlier, the Court does not generally administer an oath to attorneys before their statements are allowed as testimony. Moreover, there was no reason to have the statements presented in formal question and answer format since the relevant evidence consisted simply of additional background facts to explain why the Applicant's services were exceptional. Finally, the UST had the opportunity to question any or all of the three attorneys who testified in support of the Application. No questions were asked.

The second flaw in the UST's argument is its unrealistic and impractical view of the scope of evidence required to support a modest fee enhancement. Certainly, an Applicant has the burden of proving that a fee enhancement was warranted by the unusual circumstances of the representation. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). What the UST fails to consider is that the amount of evidence required should be proportional to the amounts at issue in the Application. For example, the UST criticizes Mr. Tanselle for not flying in from Indiana to attend the hearing in person and for failing to file a written memorandum in support of the requested enhancement. If the Court accepted these standards, it is obvious that the cost of seeking a modest fee enhancement would quickly approach the amount requested.

Would the UST object to compensation requested by an attorney for the time necessary to meet this high burden of live testimony and written memoranda? If so, how could an out-of-town special counsel such as this Applicant seek a rightfully deserved enhancement? Conversely, if the UST did not object to compensation for the time necessary to prepare for and present substantial evidence and testimony, the estate would be saddled with additional administrative expenses of no direct benefit to creditors.

The bottom line should be to maximize dividends to creditors by encouraging efficient and exceptional representation. This goal is not accomplished by applying inflexible standards for compensating professionals or for proving entitlement to a fee enhancement. For example, a $5,000 preference claim may present the same contested question of law at issue in a $1,000,000 claim. The same statutory standards obviously apply to the fee applications of the professionals involved in both matters. Nevertheless, "reasonable compensation" under 11 U.S.C. § 330 would certainly not include $2,500 of research in the $5,000 case. By contrast, the same $2,500 in research would undoubtedly be compensated without challenge in the $1,000,000 case.

By further example, the time spent preparing the UST's well researched and well drafted 23 page memorandum of law filed in support of the Motion for Reconsideration would almost certainly be subject to strong objection and careful Court scrutiny if billed by a professional retained by a trustee in a $4,500 dispute. The Court makes this point not to criticize the UST for its lengthy memorandum since the UST probably believed this issue had policy implications beyond the small amount at issue. The point is this: The evidentiary showing necessary to justify a fee enhancement must be proportional to the amount at issue. In this instance, the presentation was both proportional and legally sufficient.

### B. *Applicant Presented Sufficiently Specific Evidence to Justify the Enhancement*

At the hearing on the Application, Trustee's Counsel testified that "[Applicant's] work was more than exemplary ... [I]t was more than was expected of them considering the characters and the problems and history of Gateway Bank." TR 5:21–24. The Trust-

ee's testimony also supported the request for an enhancement. She testified that Applicant performed his services exceptionally well and basically kept the stock sale from falling through. TR 7:18–23. Applicant's exceptional services generated approximately $840,000 in funds for the estate, which was more than what the Trustee ever expected. TR 13:13–16. The Trustee opined that "the fee is low for the results achieved ..., even with the enhancement." TR 7:21–23.

Mr. Tanselle described the unforeseen difficulties which arose in the sale of the estate's interest in Gateway Bank, a bank that was in financial trouble at the time. Applicant took on the additional and unanticipated responsibility of brokering the sale of the stock, which both facilitated the sale and saved the estate the additional expense of hiring a broker. TR 14:3–9; 14:21–15:16. Applicant requested a $10,000 fee enhancement based upon the exceptional results achieved and the fact that the quality and scope of the representation exceeded what was reasonably expected by the Trustee when she retained Applicant to assist in the sale of the stock.

■ Section 330 of the Bankruptcy Code [2] provides for fee awards to professionals as "reasonable compensation for actual, necessary services ... based on the nature, the extent and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under [the Bankruptcy Code]." In an ordinary case, this analysis involves primarily the lodestar method of multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended with "reasonableness" determined by reference to the factors enumerated more than twenty years ago in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974).

The presumption is that the lodestar amount constitutes reasonable compensation under § 330 of the Bankruptcy Code. *See,*

*City of Burlington v. Dague*, 505 U.S. 557, 560–561, 112 S.Ct. 2638, 2640–41, 120 L.Ed.2d 449 (1992); *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*, 483 U.S. 711, 728, 107 S.Ct. 3078, 3088, 97 L.Ed.2d 585 (1987); *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548; *In re Hillsborough Holdings Corp.*, 191 B.R. 937 (Bank.M.D.Fla. 1995). Therefore, fee enhancements are rare. *See Shipes v. Trinity Industries*, 987 F.2d 311 (5th Cir.1993) (rejecting enhancement based on novelty and difficulty of the issues); *In re Manoa Finance Co., Inc.*, 853 F.2d 687 (9th Cir.1988) (enhancement only in exceptional circumstances where award based on standard hourly rate and actual hours worked does not compensate for work done).

In the Eleventh Circuit, the factors justifying enhancement were set forth in *Grant*, 908 F.2d at 880. The court held that "[l]odestar rates may be enhanced based on the risk of non recovery, *excellent or exceptional results*, or delay in the receipt of payment." 908 F.2d at 880 (emphasis added), *citing Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). The Court agrees with the UST that the risk of non-recovery and delay in the receipt of payment are inapplicable here. However, the third alternative ground for enhancement does apply. The results achieved by the Applicant in the instant case were exceptional.

■ Exceptional results alone do not justify a fee enhancement, "unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rules [sic] claimed." *Grant*, 908 F.2d at 880, *citing Norman*, 836 F.2d at 1302; *See Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 92

---

**2.** This case was filed prior to the amendments to § 330 contained in the Bankruptcy Reform Act of 1994. Amended § 330 includes an expanded list of relevant factors for Courts to consider in determining the amount of reasonable compensation.

L.Ed.2d 439 (1986). Here, the Applicant met that burden by presenting evidence which established that the services provided went beyond the scope of what was reasonably expected.

Applicant brought $840,000 into this estate by quarterbacking an extremely difficult sale of a precarious asset—the debtor's stock interest in a distressed bank. Counsel not only succeeded in closing a transaction for a price well in excess of the expected value of the asset, but also closed the sale despite significant hurdles which were unanticipated when he was retained. Thus, not only was the result extraordinary, Applicant's level of representation in achieving these results was also extraordinary and, as required by *Grant*, superior in quality to that which was reasonably expected.

In sum, this Court finds that the exceptional results obtained and Applicant's superior level of representation provide a sound basis for a modest fee enhancement of $4,541.50. *See Hillsborough*, 191 B.R. at 939, 940 (enhancing fees where the obstacles which presented themselves to the professionals were unique, and for the most part, unforeseen at the time of retention). *See also In re Farah*, 141 B.R. 920 (Bankr. W.D.Tex.1992) (In order to adequately compensate applicant for services, the court granted applicant's request for fee enhancement because the quality of the services was superior and applicant obtained rare and exceptional results).

### CONCLUSION

It would be a sad commentary on the administration of bankruptcy cases if bankruptcy judges, were judicially (by binding precedent) or legislatively forced to wear lodestar "blinders" in considering fee applications. Fortunately, both the Bankruptcy Code and applicable 11th Circuit authority permit fee enhancements under the exceptional circumstances presented here.

Accordingly, it is—

**ORDERED** as follows:

1. The Motion for Reconsideration is granted in part. To the extent that the motion alternatively requested additional findings in support of the fee enhancement, those findings are set forth in this opinion. In all other respects, the Motion for Reconsideration is denied.

2. The Chapter 7 Trustee is authorized and directed to pay Applicant the additional *$4,541.50* awarded in the Fee Award as a fee enhancement.